Good morning. Anthony Bornstein, on behalf of the Petitioner, Mr. Miller, in this Federal Habeas Corpus case. Your Honors, the Oregon Board of Parole violated the Due Process Protection in the 14th Amendment in failing to find that Mr. Miller had met his applicable burden of proof under the relevant parole statute. One of the threshold issues in this case is whether the statute confers a protected liberty interest. And I submit that it does. A protected liberty interest can be created if the words of the applicable statute create a legitimate expectation of a favorable parole decision. This statute does that as long as certain conditions are satisfied. And I believe that the statute does that as long as certain conditions are satisfied. And I believe that the statute does that as long as certain conditions are satisfied. As the Oregon Supreme Court has spoken to that question? The – on this particular statute, I don't believe that it has, Your Honor. I don't believe that it has, Your Honor.    I don't believe that it has a legal obligation to do so, Your Honor. Is there any need to exhaust that question before the Oregon Supreme Court before you come to us? Well, he exhausted the issue, whether the court affirmed without issuing a decision. There's no question of preservation in this case. The decision was raised, it's just the court chose not to speak to it. Yes, he raised it as a due process issue in his brief, and the parties briefed that issue, and we have a silent affirmance by the Oregon courts, followed by a review denial by the Oregon Supreme Court. Has the Oregon Supreme Court ever ruled upon a parole denial? Oh, yes. Has the Oregon Supreme Court ever ordered release after the parole board has denied release? Has the Oregon Supreme Court ever ordered release? There have been decisions under various Oregon parole statutes where the Oregon courts have very clearly found that the board erred in failing to meet its burden of proof and failing to make the requisite showing for denial of parole. So there have very definitely been decisions on various parole statutes. One such statute was ORS 144125, which came before this Court in the Brown v. Palmateer decision in 2004. May I ask you about Mr. Miller's eligibility to apply for early parole under this statute? As I understand it, you have to have 20 years in. And if you can show during that 20 years that you've made progress toward rehabilitation, you can apply for early parole that would otherwise not be available. Is that a fair characterization? Yes, the triggering point for submitting the application is temporal. It's the time limit. But then once you have reached that stage of your sentence completion, the prisoner can then submit the application or petition to the board, at which point there's a hearing called a murder review hearing or a rehabilitation hearing at which the prisoner bears the burden of proving by a preponderance of the evidence the likelihood of his rehabilitation within a reasonable time. So the question I have in this case is, was your client eligible? There's a 20-year period where one behaves himself and shows that he has made progress toward rehab. But in this case, as I read the record, Mr. Miller didn't own up to the crime for the first 10 years that he was serving the sentence. He continued to deny it. He pointed fingers at his accusers, at the court system. And finally, after 10 years, he had some epiphany and said, okay, I did this, I'll own up. But by the time he became eligible, he'd only had 10 years of demonstrated rehabilitation. As I look at the record, is that a wrong understanding? I believe it is partially incorrect, and I'll explain why, Your Honor. He did have a trial, and he pursued appeals and denied culpability through that first 10 years, from the 1982 offense through his change of heart, if you will, 10 years later. So it was well before the time he became eligible to petition the board for a conversion of his sentence to life with the possibility of parole. And at that point, he did make, as the record demonstrates, a remarkable transformation. He did then solidly own up to his involvement, writing letters to the victim's family, which is contained in the excerpt of record, writing a letter to the district attorney of Marion County, Oregon, that in fact prosecuted him. And then fulfilling through his institutional participation in various programming and work and academic pursuits, he built a solid record of rehabilitation in that time that he then presented in totality to the board at the appropriate time. So while Your Honor is correct as to that initial phase while he was pursuing his appeals, he did very much change his perspective and his position and communicated that to a number of involved persons. Let me ask you, how does it, tell me from your perspective, how does our recent en banc opinion in Hayward v. Marshall affect your petition? Well, what Hayward says is that in the federal court, we have to look to a state law to determine whether or not the statute at issue creates liberty interest and whether the state acted in conformance with its own laws in denying the prisoner parole. And so Hayward very much governs this case, as does this Court's subsequent decision in Purtill v. California Board of Parole. Now, there was another part of Hayward as well, correct? It talks about the quantum of proof that's necessary. Yes, Your Honor. And in that case, again, the Court looked to the California statute, which in that case was some evidence to support the board's decision. And so the Court decided in Hayward that it need not decide whether some evidence applies to all states. Well, didn't Hayward say that we look to the state law to determine the quantum of proof that's required to satisfy due process? Yes. Yes, Your Honor. Okay. And in California, it was some evidence. It was under the California by the California Supreme Court had decided in a couple of cases that under their law, under the state constitution, some evidence was required. Right? Yes. Now, here we have something different in the State of Washington, correct? Oregon. Yes, Your Honor. I mean, State of Oregon. We have something different. The as my co-counsel or the opposing counsel pointed out in the 28J letter that she submitted to the Court, the Oregon courts apply the substantial evidence standard to the state by statute, formulation of which is contained in the 28J letter. And that's by regulation, correct? Or is that by statute? I believe it is by statute. Is it by the by the preponderance of the evidence? I'm getting these confused, but I thought it was the Petitioner has the burden the prisoner has the burden of proof to show by a preponderance of the evidence that he is likely to change whatever the right. There's really two, there's an interplay of applicable statutes. But the board's decision has to be supported by substantial evidence. That is correct. And that's the review that the Oregon courts accord to the board's decision. For denying. But doesn't that mean that the board's decision has to be supported under Oregon law? Doesn't that mean that the board's decision has to be supported by substantial evidence? Yes, Your Honor, yes. Which is a higher burden, which is a higher quantum of proof than some evidence, correct? That is correct. Although there doesn't appear to be anything in Oregon law that speaks to the question of whether you can reference the original crime. In California, there are California Supreme Court decisions that limit the ability to base some evidence because the original crime is so heinous. Is there any equivalent in Oregon? No, Your Honor. There is regulations that the board promulgated, which are cited in the ER, that lists a number of factors that the court or, excuse me, that the board can consider. And what's significant about this particular statute, as opposed to the determination that the California board must make, is that the California board's decision has to be present-looking. It involves whether that prisoner is too dangerous to release at that moment in time. And the statute at issue in this case is actually a more favorable standard to the prisoner and the Petitioner. It is a ---- It's plain and simple. It is really four components to the statute. It is a forward-looking statute. It talks about what the prisoner's burden is and must show in the future. He has to show that by preponderance of the evidence, which is itself not a terribly onerous burden of proof, the likelihood, which is not a certainty, of rehabilitation within a reasonable time. So there's four components to the statute. And they look to the likelihood that the prisoner will achieve rehabilitation within a reasonable time. And as this Court did in Pirtle, you have to look to the evidence adduced by the Petitioner at the relevant parole hearing and whether the board's rationale in rejecting the evidence and the position that the Petitioner puts forward is supported and can be squared with the due process clause. I don't have time to ---- I think we need time on this. Yes. And we've got other cases today raising the legal issues, and we're kind of using you to set the groundwork, and I assume you'll be back to see us again. Focusing on the facts of this case, could you tell us why you don't think that the evidence standard or whatever the substantial evidence standard that Oregon law applies, why wasn't that met here? It was really a remarkable demonstration by Mr. Miller of his rehabilitation. While he may have been taking that first period of incarceration to come to terms with his offense, he did then change in a truly remarkable way. We have letters from the chaplain of the prison, staff in the prison, one in particular in page 129 of the ER, a staff member at the penitentiary who says, I don't even like to take positions or I don't usually even do this, but there's been such a substantial demonstration by Mr. Miller of his good conduct that I have to do so and want to do so in this case. The psychological report, which I've quoted at page 5 of my brief at length and appears at ER 74 to 75, contains the conclusion that he is likely to conform with the requirements of law and find the absence of law. I will say this is entirely positive. There are some things earlier in the report that can be cited to suggest that, and I'm sure will be cited by the State, to suggest that Mr. Miller's submission was not adequate or that the Board's decision had adequate foundation. And here again, where I think the preponderance standard is important because it speaks to the... But we don't apply the preponderance standard. I mean, what is the standard that we're applying? Well, just like any court can review whether a party has satisfied their burden of proof. For example, in a Jackson v. Virginia sufficiency of the evidence test or in determining whether a defendant has come forward... It's a little bit different here. Judge Clipton raises a good point, which is that we're in habeas review and we're under 2254. So is your argument that the Board's decision under applying habeas review, that it's an unreasonable determination of the facts? Is that the argument? Yes, Your Honor. An unreasonable determination of the Supreme Court's precedence under due process. No, no, no, no, no. It's an unreasonable determination of the facts by the Board. We haven't framed this under the section D-2 of... So your argument is under D-1, Your Honor. D-1, an unreasonable determination, an unreasonable application of clearly established law. That's right, Your Honor. Okay, but the clearly established Supreme Court law is some evidence, but we've said that the some evidence standard really doesn't work. You have to look to the State law to determine what the quantum of proof is. In applying those precedents to the operation of this statute, the Court's decision in affirming is unreasonably applies the due process protection concerning liberty interests and what the Board has to demonstrate to deny someone release. So tell me again how you think these burdens in quantum of proof work in Oregon? How does it work? Yes, from your understanding. Again, the Petitioner clearly does have a burden, and the burden at this specific hearing is that he has to show by a preponderance of evidence that he is likely, likely to be rehabilitated within a reasonable period of time. Again, speaking to the future. So if the prisoner has adduced evidence of that with the absence of disciplinary violations, as what we have in this case, good institutional conduct that the Board itself recognizes, and a positive psychological evaluation on balance, as well as substantial letters of support, as well as Mr. Miller's own unrefuted statements that he has set up, arranged with Dr. Cochran for counseling. Once he gets out, he has a letter from an employer and cut the tree. And then the Board, so the Board listens to all of this, and they say, okay, we've considered all the evidence that's presented, and we find that you've not met your burden of proof, you have not established by a preponderance of the evidence. And they did make that finding. The Board did decide adversely and stated that it did not. The Board was even confused at one point as to its burden. At one point, in the very same order, it states that it has the burden of proof by a preponderance of evidence. So there's some penalty. So then the Board's – so then when he – if the prisoner petitions to the Oregon Court of Appeal to review the Board's decision, then the Oregon Court of Appeal is looking under Oregon law to determine whether the Board's decision is supported by substantial evidence? Is that how it works? That's how it works, and with the overlay of the due process protection. So what is it by the time it gets to us? We're not the Oregon Parole Board. There's some degree of deference that's going to be built into the system, whether it's through the administrative process, whether it's through – because presumably the Oregon courts have to accept some degree of deference of the agency. And we're dealing through the federal habeas statute, which builds in a whole lot of deference. What does that work out, in your mind, by the time it gets to us? What's the standard we're applying? Well, there's no question that the ADPA contains a deferential standard for reviewing state court decisions, that it's themselves review parole board decisions. But what this Court's PIRTL decision this year demonstrates is that the court must nevertheless conduct a careful and searching examination of the record evidence submitted, the statutory language that this particular State has. And it's not standardless. The problem with PIRTL is that PIRTL was a de novo review by the Ninth Circuit because the State courts had not reached the issue that PIRTL had presented. So there was no deference under ADPA. So PIRTL is a little bit different. Because here, he did everything that he was supposed to do. Well, it might be different in that it's – And the board decided the case. Well, it might be different in the sense that de novo is not the applicable standard. It still would be independent review because of the lack of any reasoned decision by the Oregon Appellate Court. This Court, to my knowledge, has not held that the decision of – excuse me, the deference provisions of 2254D apply to executive branch board decisions. So the de novo – the independent review standard does very definitely apply in this case without a reasoned appellate decision. That's why I referred to the possible involvement of administrative law because we couldn't have greater review than the Oregon Court. I mean, the most that could be said is that we had de novo review with a question that went to the Oregon Court under Oregon law. As an administrative agency, although I don't know Oregon administrative law, my assumption is that the courts have to reflect some degree of deference to the agency. In the same way, when we get federal agency appeals under the APA or immigration appeals, whatever it turns out to be, you get to, for example, the substantial evidence test for reviewing agency decisions. Was there substantial evidence to support the decision? That's not the same as having us make the decision for ourselves. And so that's why I think at the first step – and that's why I ask you about Oregon court decisions reviewing parole board decisions because that, I think, is one of the steps that we're trying to go through. Do you happen to know what Oregon law tells us with regard to what the court's review of an agency decision is supposed to be based on? Is it a substantial evidence test or is it something else that gets used? Well, it would be the substantial evidence review. So that would be the standard in the case, which opposing counsel cites in the 28J letter, does set forth the Oregon case that – So even – assuming the court side is de novo review, the court review, the Oregon court review of the agency's decision is substantial evidence. So it's coming to us at least with the level of deference that would be given an agency by the Oregon court. And that would translate, as you understand it, into our effort to determine whether there was substantial evidence to support the parole board's determination. And then you get to the language of the Oregon statute, which starts to fold up upon itself because, again, we've got substantial evidence. Well, again, under Greenholtz and established due process case law, the words of the statute are critical in determining whether there's a liberty interest and, correspondingly, whether the state has satisfied the criteria of the statute that it itself – that the state itself writes to determine whether the denial of parole is justified under those specific terms. And this is not just a standardless decision by the board. The board can't make it up as it goes along. And I submit that an affirmance under due process protections of this ad hoc denial of parole, based on this standardless assertion that he's not sufficiently – sufficiently accepted responsibility, is an unreasonable application of Greenholtz. Can I bring you back just a minute to the statute again? Is there an interplay between this 20-year period that one has to do before one is eligible to ask for an early parole hearing? Is there an interplay between that 20-year period of time and the rehabilitation that must be established? Because the problem I'm having on the merits is that he wasn't – he didn't demonstrate record shows rehabilitation for a period of 20 years leading up to his eligibility to ask for this hearing. At most, it was 10 years. Because, as I said, for the first 10 years, he continued to deny it. As I read the record, he wrote letters accusing the district attorney who prosecuted the case of going after him and knowing that there was exonerating evidence and the like. And is there any interplay between the period of 20 years and rehabilitation over that whole period of time? Or is it sufficient for somebody to say, I'm 18 years in, so I'll be on good behavior, I'll get some letters, and that suffices? In that situation, it probably wouldn't suffice. And this case is different. While Your Honor is correct as to the first period of incarceration, things changed 10 years after he was convicted by terminating appeals, engaging in substantial involvement in prison rehabilitative work, meeting – having the – Was the board entitled to take into consideration the first 10 years he was in custody when he was obstinate and denying it and say, you know, we like the progress you've made in the last 10 years, but we're still not persuaded that – sufficiently to grant early parole at this point? Were they entitled to take into consideration his progress the first 10 years? It was legitimately a part of the decision. But again, the words of the statute are forward-looking, and they refer to a likelihood of a rehabilitation in the future. And the specific term they use is a reasonable time in the future. So while they can look back to some period after the crime, the focus of this statute is in another direction, and it's whether he's likely to be rehabilitated. And whether – Well, looking back at his past conduct or his past actions might tell them a great deal about the future. I'm sorry, Your Honor? Might tell them a great deal about the future, looking back. I mean, they look back over what he – as Judge Burns has pointed out. And I think the court's – And they look back and they see certain things that might tell them quite a bit about what the future – about the future. And the Court's decision in Pirtle does support that in that this Court very definitely canvassed the facts of the particular crime and the prisoner's attitude toward his actions. But what we have here is a prisoner, Mr. Miller, taking responsibility, and then there's this big debate over the level of responsibility that he took. And the record here shows that he did take responsibility, and yet by some amorphous determination, the Court found it wasn't sufficiently profound. There's one key potential difference from the California cases, including Pirtle. And this will be my last question for you, at least, for this case. And that is, under California law, decision of the California Supreme Court, the California parole board can't simply look to the initial offense. They are precluded from relying upon that as a basis for assessing future dangerousness. It appears there is no equivalent in Oregon. So – and as a result, nothing that creates a liberty interest in the California case law, there's no equivalent liberty interest here. So is there anything that you can cite that would preclude from the Oregon parole board from simply saying, looking at the circumstances of the offense of conviction, we conclude that, be it the heinous nature of it, so forth, based on that factor, we do not have sufficient confidence to conclude that the prisoner has demonstrated – and then go back to the language of the Oregon statute. And I think – and I bring that up because I think that's an important difference. In California, the board is told by the state Supreme Court, you can't lean on the original offense. I don't see anything like that here in Oregon. Well, there's two answers – two-part answer to that. One is the statute itself speaks again to the likelihood of rehabilitation in the future, which is an implicit legislative determination that focuses on how this particular prisoner is going to be in the future and what his attitude and ability to conform to the law is, and that was quite a favorable demonstration in this case and a solid one. Secondly, there are regulations which are in the excerpt of record that I could point the Court to that – in which the board expanded upon the legislative criteria and how you show rehabilitation. Okay.  We should hear from the State. May it please the Court. Justice Ruliera for the Respondent. I would like to tackle first the threshold issue, which is we might not even need to get into the merits of the case. If there is no liberty interest in the possibility of becoming eligible for parole, I would like to distinguish the aggravated murder statute that originates from the parole schemes that Oregon has. The other parole schemes arguably are similar maybe to the California parole scheme, maybe the Nebraska parole scheme, but in the Oregon statute at issue here, which is the murder statute, is quite different in its language. In the other Oregon schemes, as well as the California, as well as the Nebraska, there is a presumption that the parole board will release you unless they find certain factors. But for Oregon, it's in this particular statute, the murder statute, or Revstat 163.105, we are actually looking at a default of staying incarcerated unless the inmate or the petitioner can prove that he is capable of being rehabilitated. So that is quite a different kind of scheme than when you look at the California scheme, which says you will be released unless this. Whereas in Oregon, it says the board shall deny the relief sought unless the board finds that the There's mandatory language in the statute that you refer to that cuts the other way, though, isn't there? The statute, as I read it, provides first that the board of parole, upon the prisoner's request, shall hold a hearing within a reasonable period of time. Second, if on hearing the evidence the board finds the prisoner is capable of rehabilitation, then it shall enter an order to that effect. Hasn't the focus on these cases been on whether the statute creates mandatory language, which in turn creates an expectation that some benefit may be conferred and therefore a due process interest? I would Or liberty interest? I would argue that the focus is mainly, you know, that the default would be keeping the inmate incarcerated as opposed to I think they just worded it, they could have worded it like, the parole board shall deny relief unless, you know, the board finds that the prisoner is capable of rehabilitation. But that just changing the order would not change the meaning, I would argue. Well, they could say the board has unfettered discretion. The statute doesn't say that. Is that correct? That is true. It does not say that the board has unfettered discretion. But the language Which is why I say I understand that we have to look to State law to define what the liberty interest is, but I'm not sure I understand your argument that suggests there is no liberty interest here. Because if it doesn't say, if it could say lock them up forever, period, and that would be the end of it. It could say unfettered discretion, and I'm not sure that would be the end of it, but it would be pretty darn close. This doesn't say quite that. It may not say what California says. It may not say what Nebraska says, but it says something, and presumably whatever it says, unless the Oregon courts have spoken or interpreted it in a different fashion, whatever it says creates a liberty interest at least to that level. I would tend to disagree with that. But I believe that here, even though it's not unfettered discretion, it doesn't mean that it creates necessarily a liberty interest. If the presumption is that a prisoner will remain incarcerated unless it can prove that it is capable of being rehabilitated, then I don't see how the presumption is there. I'm not saying presumption. I'm saying that there may be a requirement, the burden of proof may be put on the prisoner. But I've been told that the Oregon courts have accepted or, by some fashion, judicially reviewed decisions of the Oregon parole board, and perhaps not under this statute, but on other statutes have directed the parole board to take action. In your mind, is there any form of judicial review within the Oregon court system for a decision under this statute? A decision under this statute is reviewed for substantial evidence. So why isn't there a liberty interest at least to that extent? I mean, we don't have a case here where the Oregon court said, we have no authority to review the parole board's decision. The court does review the parole board's decision. Now, they dispose of those challenges without opinion, so we don't have a lot, we don't have a reasoned decision. But the court didn't say, we have no authority. So why isn't there a liberty interest at least to the extent that the Oregon courts have something to review? Just because the Oregon court can review the agency's decision does not really create liberty interest in that the inmate, that the inmate can rely on that. I think that in Greenhalt, it has to be a presumption that the prisoner will be released unless there is something else. And here, it doesn't quite say that. It says you will remain incarcerated unless you can show otherwise, unless we find that you have met your burden of proof otherwise. So the liberty interest, just because the court is the Oregon courts can review the agency decision, I don't believe creates a liberty interest in that. So what do we just assume? Put that issue aside for a moment and let's just assume that there is a liberty interest. If we assume that there is a liberty interest. What happens now? Well, if we assume that there is a liberty interest, then and the court, the Oregon courts review the board's decision for a substantial interest. I know that Your Honor has asked the question how Hayward would apply in this case, because it does kind of throw into question whether it is some evidence or substantial evidence. I can say that on review on the court of appeals or the Oregon Supreme Court that they review the agency's decision for substantial evidence. But it is not clear, really, how Hayward would apply to other states. Hayward was very specific as to the California parole scheme. It says, Hayward says clearly that we look for the quantum or proof question, we look to State law. And if that would be the case, then It's what it says. It does. In this particular case, though the quantum or proof here, preponderance of the evidence or substantial evidence? In this particular case, we do have a waiver issue, though. I mean, here none of the parties, none of the parties actually briefed the issue as substantial evidence. But if we are looking at the State courts, how to review this, without the waiver issue, setting that aside, we are looking at substantial evidence based on the statutes that Oregon has. So when you say substantial evidence, that would mean is there substantial evidence to support the parole board's determination that the prisoner had not shown by a preponderance of the evidence the likelihood of rehabilitation within the near term? That is correct, Your Honor. I'm sorry.  Which statute were you reading from there? I'm reading from ORRREVSTAT 144.3353. It states there that the court of appeals may affirm, reverse, or remand the order in the same basis as provided. And it references to ORRREVSTAT 183.4828C. And there the court says the court What statute? I just want to make sure I have it. I'm sorry. Which statute were you reading from there? I'm reading from ORRREVSTAT 144.3353. And there's like some language prior to that. And it says toward the end, the court of appeals may affirm, reverse, or remand the order in the same basis as provided in ORRREVSTAT 183.4828. And that in turn states that the court shall set aside or remand the order if the evidence in the record is substantial. And substantial evidence is defined as it exists to support a finding of fact when the record viewed as a whole would permit a reasonable person to make that finding. It appears from the statute that Oregon views the factual question here, the finding of fact, as whether Petitioner proved that he was capable of rehabilitation by a preponderance of the evidence. So the analogy drawn by your colleague to Jackson versus Virginia might actually be pretty much on the money. If a reasonable finder of fact could reach the conclusion based on the evidence, that satisfies Oregon law. Is that your understanding of the substantial evidence test in Oregon? I'm sorry. Well, what you just read at the end in telling us what the substantial evidence test means in Oregon, I understood you'd be saying something that sounds pretty under Jackson versus Virginia, which is could a reasonable, could any reasonable finder of fact, usually it's a jury for sufficiency of evidence, reach the conclusion that it reached based on the evidence presented. So it's not the question of we don't become the jury, we don't become the parole board. Could a reasonable parole board reach that decision based on the evidence presented? That decision being the preponderance of the evidence of likelihood of rehabilitation. That is correct, Your Honor. In a couple of the cases such as Garcia v. Boise Cascade and Friends of Columbia Gorge, the Oregon Supreme Court has stated that they actually say the question is not whether a reasonable person could have made different findings, but whether a reasonable person could have made the findings supporting the hearing officer's decision. So if It was supported by preponderance of the evidence. That's correct. So if in looking at the merits of this case, and if we're looking at substantial evidence, then we would look at can a reasonable person look at this and say, oh, I'm not, don't necessarily agree with the board's decision, but I, you know, a reasonable person could make that decision. Then that would be sufficient and the board's decision at that point should be affirmed. And here in this case, we would argue whether some evidence or substantial evidence, there is enough there. So it's not some. You acknowledge now that it is substantial evidence. That's the standard word of apply, you think? If we disregard the waiver issue that I was talking about, and potentially it is, if Hayward does, if we apply Hayward in this case, which, again, I would contend that that would be specifically talking to California law, but if we do apply it here, I, potentially it is substantial evidence. And if it's substantial evidence, then we have enough in this case. I want to make sure I understand this particular provision. I think I do, but I want to check my ballast with you. This is not a, this board does not set a parole release date for the person, correct? That is correct. It does not. This is a pre-parole suitability hearing. In other words. That is correct. Ordinarily, a prisoner who commits aggravated murder wouldn't be eligible for such a hearing until 30 years, but there's an exception carved out. If you've shown rehabilitation, within 20 years you can come before this board and they can say, they have the power to say you have an early parole hearing. You can get in front of a parole board earlier than otherwise, right? That would be my understanding. Unlike other parole schemes in Oregon, where they said, well, here's your release date, then we have a hearing. This is different in that. Here's a question I have for you, then. This circuit has hinted, probably stronger than hinted, maybe said, that the parole decision has to directly, directly affect the duration of the prison term. Now, in your view, does what this board does, this rehabilitation finding, does that directly affect the duration of the prison term or does it indirectly affect the duration of the term? I would contend that it's more of an indirect effect on the term because I don't believe that it necessarily means that if they find that you are capable of rehabilitation, that you would immediately be released from incarceration. I don't know that it is quite settled in Oregon courts. Are there any statistics you're aware of? Is it more likely if someone is found to be rehabilitated or at least capable of rehabilitation that they're going to get out earlier than people that the board doesn't make such a finding on? I apologize, Your Honor, that I don't know any statistics regarding that. We could try to brief that and find out if the court would wish to. But in this particular case, even if it's substantial evidence, there is enough there. The board was talking about, on the merits, was talking about, as Your Honor had pointed out, there's this 10-year period where this petitioner did not even admit to the crime. And after that, we would argue that there is a lot of minimization involved. That is, a reasonable person can look at it and say, oh, yeah, a reasonable person could make that decision. And I think that in this particular case, they met the substantial evidence burden, the quantum of evidence, I mean. And this should be affirmed. Unless the court has any questions at this point for me. Thank you.  Good morning, Your Honors. For the record, Anthony Bornstein, on behalf of Mr. Fisher. I'll give you just one minute to respond. We're still on Miller. Do you have anything you want to say? Yes. Nobody gets out of this room untouched, you know. So we want to kick around Miller one more time. Just keep it short. We're going to move on. We have the same issues in Fisher. Well, one particular point of significance is that ER 117, this is actually in the Fisher case, and because they involve the same statute, I would ask the Court respectively to refer to that particular regulation cited there. And in response to Your Honor's question, the ten separate criteria that the Board itself promulgated to guide its decision at the rehabilitation does not in any way refer to the facts of the specific crime. There's one passage, Criteria Number 8, excuse me, Number 6, that speaks to prior to the offense that led to this particular incarceration. So all of these particular criteria present the model by which the Board makes the decision, and they refer to the specific type of evidence that Mr. Miller came forward with in this case, his institutional employment history, his disciplinary history, which was absent in this case, his involvement in correctional treatment, and whether or not he had an emotional disturbance and the like. And again, the psychologist found that he did not. So evaluating these particular criteria, he very clearly met that burden of proof, and the Board's decision, which focused on a different type of criteria, was therefore unreasonable. Okay. Let's submit. Let's complete our Miller.
judges: Burns, Paez, Clifton